Robert LaFORE, Plaintiff,

v.

EMBLEM TAPE & LABEL COMPANY, a Colorado Corporation, Defendant.

Civ. A. No. 77–K–848.

United States District Court, D. Colorado.

April 20, 1978.

Paul A. Baca, Denver, Colo., for plaintiff.

Michael S. McCarthy, Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS

KANE, District Judge.

This matter is before the court on defendant's motion to dismiss the second claim for relief. Plaintiff is a Mexican-American citizen of the United States and is a former employee of Emblem Tape and Label Company. Plaintiff alleges that defendant intentionally and willfully terminated his employment because of his color, race and national origin and not because of any difficulties with his attendance. He further alleges that as a result of these acts committed by the defendant, plaintiff has been denied and will continue to be denied his rights under 42 U.S.C. § 2000e *et seq.* and under 42 U.S.C. § 1981. Defendant moves for an order of this court dismissing the latter claim for relief.

The applicability of § 1981 to alleged discrimination against Spanish-surnamed individuals has been considered with differing results. In *Enriquez v. Honeywell, Inc.*, 431 F.Supp. 901 (W.D.Okl.1977), the court held that the phrase "white citizens" did not restrict the statute's protection to those who have been victims of racial discrimination. The court noted the firm line between discrimination on account of race and discrimination on account of national origin. The court acknowledged that they could indeed overlap. *See Cubas v. Rapid Am. Corp., Inc.*, 420 F.Supp. 663 (E.D.Pa.1976); *Gomez v. Pima County*, 426 F.Supp. 816 (D.C.Ariz.1976); *Budinsky v. Corning Glass Works*, 425 F.Supp. 786 (W.D.Pa.1977). In *Enriquez*, the court directed attention to *Chicano Police Officer's Ass'n v. Stover*, 526 F.2d 431 (10th Cir. 1975), where allegations of racial discrimination were made. This was a civil rights suit challenging the hiring and promotion procedures of the Albuquerque, New Mexico Police Department as racially discriminatory against Spanish speaking and surnamed Americans. The complaint was brought under 42 U.S.C. §§ 1981, 1983 and 1985. Although the Tenth Circuit did not directly address the propriety of a civil rights action under § 1981 for alleged discrimination against Spanish-surnamed

individuals, Judge Eubanks, in *Enriquez*, relied on the Tenth Circuit's failure to address this issue as supportive of the contention that § 1981 offers a cause of action in a case of this kind.

However, a contrary position was taken by Judge Arraj in *Ida V. Campos v. Touche Ross & Co., et al.*, Civil Action No. 76–A–535 (Jan. 18, 1977), and Judge Matsch in *Anthony H. Manzanares v. Safeway Stores, Inc.*, Civil Action No. 75–M–1360 (June 21, 1977). In *Campos*, a partial summary judgment was granted where plaintiff as a Spanish-surnamed American brought an action under 42 U.S.C. § 1981. The court held that plaintiff was a member of the white race and could pursue her claim of employment discrimination under 42 U.S.C. § 2000e–5. A similar determination was made in *Manzanares*.

A succinct statement of this position was made by Judge Fogel in *Jones v. United Gas Improvement Corp.*, 68 F.R.D. 1 (E.D. Pa.1975), wherein he held that "§ 1981 does not apply to discrimination on grounds other than race or alienage. Many courts have stated that the statute is inapplicable to discrimination based upon national origin." *Id.* at 13 (citations omitted).

After an extensive analysis of the premise that § 1981 prohibits only that discrimination which is based upon race or alienage, the court concluded:

> The provisions of 42 U.S.C. § 1981 are limited in their application to discrimination, the effect of which is to deny to any person within the jurisdiction of the United States any of the rights which are enjoyed by white citizens of this nation. Discrimination on other grounds, such as religion, sex, or national origin, to which white citizens may be subject, as well as white non-citizens, non-white citizens, is not proscribed by the statute. *Id.* at 15.

▮ Recently, however, in an opinion not selected for routine publication (*Loraine D. Valdez v. VanLandingham, et al.*, 76–1373) the Court of Appeals, Tenth Circuit, held that the plaintiff who is not of Mexican-American descent but is married to one of

Mexican-American descent belongs to a racial class which is protected by § 1981. The court commented that "It is irrelevant that the plaintiff is herself Caucasian as long as she was discriminated against as if she belonged to a minority." The court cites with approval *Ortega v. Merit Ins. Co.*, 433 F.Supp. 135 (N.D.Ill.1977) which presents the view that various ethnic groups float in and out of racial categorization according to historical circumstance. The gist is that all persons should be afforded the same rights and privileges enjoyed by white citizens. The flotation theory offers certain pragmatic advantages, but its analytical utility is obscure. Conceivably, the category we know as white citizens would be afforded § 1981 protection in the event their rights and privileges were diminished. Clearly, § 1981 prohibits racial discrimination in private employment against white citizens. *McDonald, et al., v. Santa Fe Trail Transportation Co.*, 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976).

I must confess to a great deal of confusion and trepidation. The use of racial classifications or distinctions in political or judicial functions is fraught with peril. § 1981 itself does not even mention race. It merely states that all persons shall have the same right and benefit as is enjoyed by white citizens. Equating "white citizens" with a racial classification is utterly lacking in sophistication. There is no scientific justification for the equation and its use inevitably leads to irretrievable confusion.

The Encyclopaedia Britannica lists nine races and suggests the possibility of a tenth. The categories are delineated on the basis of taxonomic characteristics which are genetically transmittable such as blood traits, hair form and chemical composition. Further, races are subject to evolution: some vanish, some new ones emerge and all change.

■ Suffice it to say that an analysis based upon questionable concepts of race is not productive. I believe the intent of the Court of Appeals in *Valdez, supra,* is best served by recognizing that § 1981 is intended to prohibit the maintenance of favored class. Historically a class called "white citizens" received more favorable treatment than other classes. If we understand the term "white citizen" in the statute to mean that group which was most favored, the rule becomes understandable. All persons are entitled to the same rights and benefits as the most favored class.

■ Therefore, if plaintiff can prove that an identifiable class of which he is not a member receives more favorable treatment than plaintiff because of that class distinction, then plaintiff is entitled to the protection of § 1981.

IT IS ORDERED that defendant's motion to dismiss the second claim for relief is hereby denied.